IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**ABC SUPPLY CO., INC.**                                                    **PLAINTIFF**

**V.**                               **NO. 3:25-CV-144-DMB-JMV**

**ALL IN ONE RENOVATIONS
LLC and CHARLES THOMAS
ROBERTS JR.**                                          **DEFENDANTS**

**ORDER**

ABC Supply Co., Inc., moves for a default judgment on its breach of contract claim against All in One Renovations LLC and Charles Thomas Roberts Jr. Because a default judgment is procedurally warranted and the pleadings establish a sufficient basis for a default judgment, a default judgment will be entered.

**I
Procedural History**

On May 9, 2025, ABC Supply Co., Inc., filed a complaint in the United States District Court for the Northern District of Mississippi against All in One Renovations LLC and Charles Thomas Roberts Jr. seeking "damages arising from Defendants' failure to pay ABC for work, labor, and materials it supplied to [them]." Doc. #1 at 1. The complaint asserts claims for breach of contract, breach of the covenant of good faith and fair dealing, quantum meruit, unjust enrichment, and "open account." *Id.* at 3–5. Roberts was served the complaint on May 17, 2025, and All in One was served the complaint two days later. Docs. #3, #4. On June 11, the Clerk of the Court entered a default against both defendants on ABC's motion.[1] Docs. #5, #6.

---

[1] All in One filed a pro se answer to the complaint on June 20, Doc. #7; but on June 23, United States Magistrate Judge Jane M. Virden struck the answer because All in One "may appear in this action only through a licensed attorney admitted to practice in this court," Doc. #8 at PageID 60.

On September 25, 2025, ABC filed a motion for default judgment against both defendants.[2] Doc. #11.[3] The defendants did not respond to the motion.

# II
# Analysis

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, a default may be entered "against a party when it has failed to plead or otherwise defend itself." *Sun Bank of Ocala v. Pelican Homestead and Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). Obtaining a default judgment is a three-step process: (1) default by the defendant; (2) entry of default by the court clerk; and (3) a default judgment granted by the court. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) ("After defendant's default has been entered, plaintiff may apply for a judgment based on such default. This is a default judgment.") (emphasis omitted). Because the first two steps have been satisfied here, the Court must determine whether to enter a default judgment against All in One and Roberts. In making this determination, the Court considers (1) "whether the entry of default judgment is procedurally warranted;" (2) "whether there is a sufficient basis in the pleadings for the judgment;" and (3) "what form of relief, if any, the plaintiff should receive." *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 814 (N.D. Tex. 2015).

### A. Procedural Justification

In determining whether a default judgment is procedurally warranted, a court should consider (1) "whether material issues of fact are at issue;" (2) "whether there has been substantial

---

[2] ABC initially moved for a default judgment on July 15 but the Court denied the motion without prejudice on procedural grounds. Doc. #10 at 2.

[3] In violation of Local Rule 7(b)(2)'s requirement that all exhibits to a motion "be denominated by both an exhibit letter or number and a meaningful description," ABC failed to do so. Fortunately for ABC, Clerk's Office staff added descriptions of the exhibits—otherwise, the motion would have been denied for that procedural deficiency.

prejudice;" (3) "whether the grounds for default are clearly established;" (4) "whether the default was caused by a good cause mistake or excusable neglect;" (5) "the harshness of a default judgment;" and (6) "whether the court would think itself obligated to set aside the default on the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

First, where, as here, a party fails to respond to or answer the complaint,[4] there are no material issues of fact at issue. *See Alvarado Martinez v. Eltman L., P.C.*, 444 F. Supp 3d 748, 753 (N.D. Tex 2020) ("[B]ecause Eltman has not filed any responsive pleading, there are no materials facts in dispute."). Second, the defendants' failure to respond causes prejudice to ABC because it "threatens to bring the adversary process to a halt, effectively prejudicing [ABC's] interests." *Id*. Third, as mentioned above, the grounds for default (default by the defendants and entry of default by the Clerk of the Court) have been clearly established. Fourth, there is no evidence before the Court that the "default was caused by a good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fifth, the defendants have not attempted to set aside the default since it was entered. *See Helena Chem. Co v. Aylward*, No. 4:15-cv-96, 2016 WL 1611121, at *2 (N.D. Miss Apr. 21, 2016) ("[W]hile default judgment is a harsh remedy, any harness is mitigated where, as here, [each] defendant has had substantial time to correct the default."). Finally, if the defendants later seek to challenge the default, the Court is unaware of any facts that would make it obligated to set aside the default. *Lindsey*, 161 F.3d at 893. For these reasons, a default judgment is procedurally warranted here.

---

[4] ABC argues that "[w]hile All in One may have attempted to file a response pro se, the Court's June 23rd Order made clear that the answer was legally insufficient because an LLC cannot appear pro se. … Thus, All in One did not appear in this Court because it did not do so by an attorney at law. … Further, the Order Striking Answer was mailed to Defendants, and Defendants still have failed to plead or otherwise defend." Doc. #12 at 5 (internal citations and emphasis omitted). The Court agrees that All in One may not be deemed to have appeared based on a stricken answer, especially since it did not attempt to file a proper answer after Judge Virden struck its pro se answer.

3

### B. Sufficient Basis in the Pleadings

"Even when a defendant is in default, a plaintiff is not 'entitled to default judgment as a matter of right.'" *Escalante v. Lidge*, 34 F.4th 486, 492 (5th. Cir. 2022) (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996)). "[A] court may still deny default judgment if the plaintiff has failed to state a claim on which relief can be granted." *Id*. at 493. The complaint's factual allegations must "be enough to raise a right to relief above the speculative level." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F. 3d 490, 498 (5th Cir. 2015). "[T]he district court takes as true the facts asserted by a plaintiff against a defaulting defendant" because "'[t]he defendant by his default, admits the plaintiff's wellpleaded allegations of fact.'" *Escalante*, 34 F.4th at 492 (quoting *Nishimatsu Constr. Co. v. Hou. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

### 1. Factual allegations

On or about April 17, 2019, All in One and Roberts signed a credit application with ABC in which ABC "agreed to sell building materials to [them] on credit, subject to certain conditions."[5] Doc. #1 at 2; Doc. #1-1 at PageID 8. ABC "supplied work, labor, and sold building materials to [All in One and Roberts] on credit; yet [they] have not paid for all the work, labor, and materials [they] received." Doc. #1 at 3. As of February 2025, they "owe ABC a balance of $75,976.04 for work, labor and materials provided to [them] by ABC." *Id*.; Doc. #1-2 at PageID 9; Doc. #1-3 at PageID 10–33.

---

[5] As part of the application, Roberts signed a "Continuing Guaranty" providing that he would:

> jointly, severally, and unconditionally guarantee and promise to promptly pay when due any and all indebtedness of Buyer to ABC, together with any late payment charge that may accrue thereon, regardless of how such indebtedness is incurred, whether such indebtedness is direct or indirect, absolute or contingent, due or to become due, or exists now or arises hereafter. In addition, the Guarantor(s) agree to pay all costs of collection, legal expenses and attorney's fees paid or incurred by ABC in the collection of Buyer's indebtedness and in enforcing this Continuing Guaranty.

*Id.* at 2–3; *see* Doc. #1-1 at PageID 8.

4

## 2. Claim

ABC seeks a default judgment only as to its breach of contract claim. *See* Doc. #12 at 6 ("The issue here is a simple breach of contract."). For a breach of contract claim under Mississippi law,[6] a plaintiff must demonstrate "(1) the existence of a valid and binding contract," and (2) "the defendant has broken, or breached it." *Maness v. K & A Enters. of Miss., LLC*, 250 So. 3d 402, 414 (Miss. 2018) (quoting *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1224 (Miss. 2012)). A binding contract has "(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *White v. Jernigan Copeland Att'ys, PLLC*, 346 So. 3d 887, 896 (Miss. 2022) (cleaned up).

Here, ABC pled the existence of a valid and binding contract (the credit application) between it and the defendants. Doc. #1 at 2–3. ABC also specified that it agreed to supply materials to the defendants and that in exchange they agreed to pay for such materials, satisfying the second, third, and fifth elements of a contract. *Id.* at 3. There is no indication any party lacked capacity to contract. *See Frierson v. Delta Outdoor Inc.*, 794 So. 2d 220, 224 (Miss. 2001) ("The law presumes a person sane and mentally capable to enter a contract. … The burden is upon the party seeking to avoid an instrument on the ground of insanity or mental capacity to establish it by a preponderance of proof."). As to the final element, the Court is unaware of any legal prohibition precluding contract formation. Because ABC has alleged the existence of a valid contract and its breach by the defendants, there is a sufficient basis in the pleadings for a default judgment.

---

[6] The credit application contains a choice of law clause that provides it "will be governed by and construed and enforced in accordance with the procedural and substantive laws of the State where the action is brought." Doc. #11-1 at PageID 75. Generally, Mississippi upholds choice of law provisions "where the contract is valid and binding." *Lagrone* v. *OMNOVA Sols.*, No. 1:16-159, 2018 WL 1570810, at *2 (N.D. Miss. Mar. 31, 2018).

### C. Relief

"A default judgment establishes the defendant's liability but not the quantity of damages." *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 761 (5th Cir. 2019). "[T]he burden of establishing damages rest[s] squarely and solely on [the plaintiff]." *Flynn v. People's Choice Home Loans, Inc.*, 440 F. App'x 452, 457 (6th Cir. 2011). "[A] plaintiff seeking monetary damages for breach of contract must put into evidence, with as much accuracy as possible, proof of the damages being sought." *Bus. Commc'n*, 90 So. 3d at 1225 (internal quotation marks omitted).

In support of its motion for default judgment, ABC requests $75,976.04 for outstanding invoices, and attorneys' fees, and $9,875.50 in total expenses. Doc. #12 at 7–8. ABC relies on the declaration of Rebbeca Logeman, "Debt Recovery Analyst for American Builders & Contractors Supply Co., Inc.;" and the declaration of Sterling Kidd, "an attorney with the law firm Baker Donelson, Bearman, Caldwell & Berkowitz P.C." Docs. #11-4, #11-5. Logeman indicates that "as of August 26, 2025, the unpaid obligations total not less than $91,549.74," consisting of $75,976.04 in unpaid principal; $5,698.20 in accrued interest at a pre-judgment and post judgment annual rate of 18%; and $9,875.00 in attorneys' fees and expenses. Doc. #11-4 at 2.

#### 1. Outstanding balance

Considering Logeman's declaration and the unpaid invoices attached to ABC's motion as exhibits, ABC has presented sufficient evidence of the $75,976.04 in unpaid principal owed by All in One and Roberts. Doc. #11-2 at PageID 77; Doc. #11-3 at PageID 78–101; Doc. #11-4 at 2.

#### 2. Pre-judgment interest

In diversity cases, "[s]tate law governs the award of prejudgment interest." *Harvey v. Caesars Ent. Operating Co., Inc.*, 790 Fed. App'x. 582, 593 (5th Cir. 2019) (quoting *Harris v. Mickel*, 15 F.3d 428, 429 (5th Cir. 1994)). Mississippi Code § 75-17-7 provides:

> All judgments or decrees founded on any sale or contract shall bear interest at the same rate as the contract evidencing the debt on which the judgment or decree was rendered. All other judgments or decrees shall bear interest at a per annum rate set by the judge hearing the complaint from a date determined by such judge to be fair but in no event prior to the filing of the complaint.

"The Mississippi Supreme Court has indicated that the second sentence of § 75-17-7 applies to whether prejudgment interest should be awarded in contract cases where no rate of interest is specified." *Harvey*, 790 Fed. App'x at 593.

"Under Mississippi law, prejudgment interest may be allowed in cases where the amount due is liquidated when the claim is originally made." *Burnsed Oil Co. Inc. v. Grynberg*, 320 Fed. App'x 222, 232 (5th Cir. 2009). Where pre-judgment interest is to be awarded, "it dates from the breach of contract." *Id.* (quoting *Est. of Baxter v. Shaw Assocs., Inc.*, 797 So. 2d 396, 403 (Miss. Ct. App. 2001)).

In its complaint, ABC requests pre-judgment interest. Doc. #1 at 7. Logeman's declaration states that "[t]he Credit Application also entitles ABC to pre-judgment … interest [at a] rate of 18% per year (1.5% a month)." Doc. #11-4 at 2. However, the credit application states only that "[i]n the event Buyer fails to make payment when due, Buyer will pay, in addition to the invoice amount, a monthly *late payment charge of 1.5%*." Doc. #11-1 at PageID 75 (emphasis added). To the extent this provision may be said to equate to pre-judgment interest (1.5% x 12 months), the Court approves it as such. But to the extent it may be argued that it does not authorize pre-judgment interest at 18% annually, the Court alternatively concludes pre-judgment interest at an annual rate of 18% is appropriate given the language in the credit application, and the defendants' default. *See Harvey*, 790 Fed. App'x at 593 ("the second sentence of § 75-17-7 gives trial courts discretion to set the prejudgment interest rate"). So, the Court will award pre-judgment interest at an annual rate of 18%—which, according to Logeman's declaration, amounts to $5,698.20 as of August 26, 2025.

### 3. Post-judgment interest

"[I]n diversity cases, federal law controls the award of postjudgment interest, including decisions about when postjudgment interest begins to accrue." *Harvey*, 790 Fed. App'x at 594 (quoting *ExxonMobil Corp. v. Elec. Reliability Servs., Inc.*, 868 F.3d 408, 419 (5th Cir. 2017)). "Postjudgment interest is not discretionary but 'shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield.'" *Celtic Marine Corp. v. James C. Justice Cos.*, 593 Fed. App'x 300, 305 (5th Cir. 2014) (quoting *Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 456-57 (5th Cir. 2013); *see* 28 U.S.C. § 1961(a). "A contract can validly establish a different rate, but it 'must do so using clear, unambiguous, and unequivocal language.'" *Celtic*, 593 Fed. App'x at 305 (quoting *Tricon Energy*, 718 F.3d at 458–59).

In its complaint, ABC requests post-judgment interest. Doc. #1 at 7. Logeman's declaration asserts that "[t]he Credit Application … entitles ABC to … post-judgment … interest [at a] rate of 18% per year (1.5% a month)." Doc. #11-4 at 2. But the credit application does not mention post-judgment interest much less include language that clearly, unambiguously, and unequivocally entitles ABC to an amount different than the statutory rate. *See generally* Doc. #11-1. Accordingly, ABC will be allowed post-judgment interest at the statutory rate.

### 4. Attorneys' fees and cost

"Under Mississippi law, attorney's fees 'cannot be awarded absent a relevant contractual provision.'" *Harvey*, 790 Fed. App'x at 596 (quoting *A&F Props., LLC v. Lake Caroline Inc.*, 775 So. 2d 1276, 1282 (Miss. Ct. App. 2000)). Where a contract provides for such fees, the Court may award them. *Bluewater Logistics, LLC v. Williford*, 55 So. 3d 148, 164 (Miss. 2011). ABC's credit application states that the "[b]uyer will pay [s]eller its actual attorney's fees and other costs

incurred as a result of or in connection with such action." Doc. #11-1 at PageID 72.

An award of attorney's fees must be reasonable. *Weaver v. Ross*, 391 So. 3d 1240, 1248 (Miss. Ct. App. 2024). To calculate a reasonable fee award, courts use the lodestar method which entails using "the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate." *Tupelo Redev. Agency v. Gray Corp.*, 972 So. 2d 495, 521–22 (Miss. 2007) (quoting *BellSouth Pers. Commc'ns, LLC v. Bd. of Supervisors of Hinds Cnty.*, 912 So. 2d 436, 446–47 (Miss. 2005)). Once the lodestar amount is determined, a court must consider the twelve factors articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

### a. Lodestar calculation

Kidd's declaration[7] states that ABC "incurred legal fees of $9,220.50 and expenses of $655.00 for a total of $9,875.50." Doc. #11-5 at 1. Kidd lists four Baker Donelson attorneys and staff members who expended hours during the pendency of this case, along with their hourly rates: (1) Kidd himself, "at a current hourly rate of $540.00;" (2) "James Tulp at an hourly rate of $335.00;" (3) "Conner Whitten at a current hourly rate of $415.00;" and (4) "Andrea Williams," a paralegal "at an hourly rate of $390.00." *Id*. Kidd explains that "[c]ombined, the attorneys, paralegals, and legal assistants billing time to this matter spent 22.9 hours prosecuting this suit resulting in fees in the amount of $9,220.50 and expenses of $655.00 for a total of $9,875.50." *Id*. at 2. Kidd also states that "the rates charged by [Baker Donelson] for related litigation services, and specifically the hourly rates charged for attorneys and paralegals who billed time to this matter, are typical of reasonable rates" and "the rates charged for the attorneys and paralegals who billed

---

[7] Kidd's declaration may be used to assess ABC's request for attorneys' fees. *See Tyler v. Cedar Hill Indep. Sch. Dist.*, 433 Fed. App'x 265, 267 (5th Cir. 2011) ("[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.'") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

9

time to this matter are typical for the experience level of the attorneys and paralegals and the amount of time billed for this matter is reasonable for the complexity and duration of the matter." *Id.*

Based on the Court's review of the record, the specified hourly rates and the number of hours spent litigating this case are reasonable, especially given the $75,976.04 in unpaid principle owed to ABC. *See Weeks v. S. Bell Tel. and Tel. Co.*, 467 F.2d 95, 97 (5th Cir. 1972) ("The determination of a reasonable attorney's fee is left to the sound discretion of the trial judge."); *see also Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006) ("There exists a strong presumption of the reasonableness of the lodestar amount.").

### b. *Johnson factors*

The *Johnson* factors to consider are (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[8] 488 F.2d 714, 717–19 (5th Cir. 1974).

Because factors one, two, three, five, seven, eight, and nine are reflected in the lodestar

---

[8] These factors are virtually identical to the factors outlined in the Mississippi Rules of Professional Conduct regarding what should be considered in evaluating the reasonableness of an attorney's fee. *See* Miss. R. Prof. Conduct 1.5(a) ("The factors to be considered in determining the reasonableness of a fee include … (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.") (paragraph formatting omitted).

amount, the Court will not consider them. *See Walker v. U.S. Dep't of Housing and Urban Dev.*, 99 F.3d 761, 770–72 & n.12 (5th Cir. 1996) ("'[T]he district court must be careful … not to double count a Johnson factor already considered in calculating the lodestar.'") (quoting *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993)). And "[t]he Supreme Court has barred any use of the sixth factor." *Id.* at 772. So, the Court limits its examination to the fourth, tenth, eleventh, and twelfth factors.

Given the absence of information or evidence that ABC's counsel was precluded from gaining other employment as a result of this case or that the case was undesirable, or regarding the nature and length of the professional relationship between ABC and its counsel, the fourth, tenth, and eleventh factors are neutral. As for the twelfth factor, the Court concludes the lodestar amount is in line with similar awards. *See, e.g., Harrison v. McMillan*, 828 So. 2d 756 (Miss. 2002) (affirming $32,833.67 attorneys' fee award in breach of contract case).

## III
## Conclusion

ABC's motion for default judgment [11] is **GRANTED**. A default judgment will be entered against the defendants in the amount of $91,549.74 ($75,976.04 for outstanding invoices; $5,698.20 for pre-judgment interest; $9,220.50 for attorneys' fees; and $655.00 in expenses), along with post-judgment interest at the statutory rate.

**SO ORDERED**, this 29th day of October, 2025.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**